IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Enrique Seoane-Vazquez, | : | |
| Plaintiff | : | Civil Action 2:10-cv-622 |
| v. | : | |
| The Ohio State University, | : | Magistrate Judge Abel |
| Defendant | : | |

**OPINION AND ORDER**

This matter is before the Court pursuant to the motion of Defendant the Ohio State University ("OSU") to dismiss for failure to state a claim upon which this court can grant relief (Doc. 8). For the reasons set forth herein, the motion is granted in part.

**Factual and procedural background**. Dr. Enrique Seoane-Vazquez ("Seoane"), a native of Spain, was hired as an assistant professor in OSU's College of Pharmacy ("COP") in August 2002. Seoane alleges that, during his employment there, he was harassed and discriminated against by other members of faculty on the basis of his nationality. On August 22, 2005, Seoane submitted an internal HR complaint concerning these activities; after several rounds of investigation and decision, OSU Human Resources ("HR") issued a final case report on March 1, 2006 concluding that no violation of OSU policy had occurred. Seoane appealed this to

1

the associate vice president for human resources, who denied the appeal.

On September 6, 2006, Seoane filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") alleging discrimination and retaliation (the "2006 charges"). On January 7, 2007, Seoane filed another OSU HR complaint. On May 9, 2007, Seoane received a Notice of Right to Sue from the EEOC (the "2007 Right-to-Sue letter"). He thereupon filed suit in this court on August 8, 2007 (the "2007 lawsuit"), alleging discrimination, retaliation, and discrimination by association.

This court denied Seoane's request for a temporary restraining order enjoining OSU from proceeding with a scheduled December 1, 2008 vote on his tenure. That vote was held, and Seoane was denied tenure. In March 2009, the Court set the case for trial in January 2010.[1] In October 2009, following a scheduling conference, the Court issued a new scheduling order postponing the trial until April 12, 2010. However, a few days later, Seoane filed a document purporting to be a notice of Fed. R. Civ. P. 41(a) dismissal. As Defendant indicated that it did not oppose dismissal, the Court took this document to be a motion to dismiss without prejudice and granted it on October 15, 2009. On October 29, 2010, the University Faculty Hearing Committee denied Seoane's appeal of the decision to deny him tenure.

On November 2, 2009, Seoane filed an intake questionnaire with OCRC and

---

[1] Plaintiff proposed a December 2009 trial; Defendant proposed "End of January 2010 or later". Case No. 2:07-cv-00775 at Docs. 36, 37.

2

EEOC ("the intake questionnaire").  Later, on February 4, 2010, Plaintiff filed a formal Charge of Discrimination.  On June 11, 2010, he received a Notice of Right to Sue on the 2009 charges ("the 2010 Right-to-Sue letter").  Seoane thereupon filed this action, on July 9, 2010.  His pleading was called "Plaintiff's Re-Filed Complaint and Jury Demand", and he included in his case caption the "original case" number, which the Clerk of Court obliterated and substituted with the number assigned to this action.  (Doc 2 at 1.)  In his new complaint, he referred to it as his "Re-Filed Amended Complaint" and stated that he had "filed and commenced this action" on August 8, 2007.  (*Id.* at 1, 2.)  Seoane brought three causes of action: discrimination, retaliation, and discrimination and retaliation by association.

Defendant has now filed a motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6).  It alleges that all of Plaintiff's claims which are outside the scope of the 2010 charges are not properly before this court, that his 2010 Charge of Discrimination refers only to the denial of his *appeal* of the tenure decision, which is not actionable at law, and that Plaintiff had failed to make any allegation in his complaint pertaining to the denial of his appeal of the tenure decision.

**Motion to dismiss**.  Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to assert by motion a defense of failure to state a claim upon which relief can be granted.  The United States Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007).  The United States Court of Appeals for the Sixth Circuit has explained:

3

> The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [*Twombly*] at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted).

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). The claims must be plausible and not merely conceivable. *Twombly*, 127 S. Ct. at 1974.

With regard to the previous standard as set forth in *Conley v. Gibson* the Sixth Circuit explained:

> In [*Twombly*], the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

*Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548.[2]

**Equitable tolling**. A plaintiff seeking to bring an action under Title VII must first exhaust his administrative remedies, by filing an appropriate charge with the EEOC. Such charges, when they are presented as here, must cover conduct which occurred no more than 300 days before prior to filing. 42 U.S.C. §2000e-5(e)(1).

---

[2] Plaintiff is, accordingly, specifically cautioned that *Conley v. Gibson, supra,* no longer accurately represents the Rule 12(b)(6) standard. (Doc. 19 at fn. 4.)

4

After the plaintiff receives a "right-to-sue" letter permitting him to proceed with litigation, he must then file suit within ninety days. 42 U.S.C. §2000e-5(f)(1); 42 U.S.C. §12117(a); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149 (1984). If a plaintiff files such a lawsuit, and then dismisses it without prejudice more than ninety days after receiving the right-to-sue letter, he is time-barred from bringing the claims covered by his right-to-sue letter in a subsequent lawsuit. Such a dismissal without prejudice "leaves the situation the same as if the suit had never been brought" – *i.e.*, as if the plaintiff had missed his ninety-day window in the first place. *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987), citing *Harris v. City of Canton, Ohio*, 725 F.2d 371, 176-77 (6th Cir. 1984).

    Plaintiff originally filed his EEOC charges on September 6, 2006, and received the 2007 Right-to-Sue letter on May 9, 2007. He timely filed suit. However, he later voluntarily dismissed his prior lawsuit, and did so more than ninety days after receiving the letter. This Defendant argues, renders the conduct he alleged in his 2006 charges time-barred for purposes of this litigation. Moreover, Defendant asserts, conduct actionable in his new lawsuit could have occurred no earlier than 300 days before he filed his November 2, 2010 Intake Questionnaire (January 6, 2009), barring most of the allegations of retaliation in Plaintiff's new complaint. However, Plaintiff rejoins that the doctrine of equitable tolling should preserve both the claims covered by his 2007 letter and his new allegations predating January 6, 2009.

    The Sixth Circuit Court of Appeals has held that, under certain

circumstances where it would be just to do so, a court will toll a statute of limitations period.

> In evaluating an equitable tolling claim, we look to five factors: "(1) lack of actual notice of [the] filing requirement; (2) lack of constructive knowledge of [the] filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

*U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 519 (6th Cir. 2007), quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). These are not the only factors a court will consider, however, and it will determine equitable tolling on a case-by-case basis. *Id.*, citing *Seay v. Tenn. Valley Auth.*, 339 F.2d 454, 469 (6th Cir. 2003).

The plaintiff here offers an extensive narrative of the reasons why, as he portrays it, he was forced to dismiss his prior lawsuit and delay filing a new one. In brief, Plaintiff asserts that after the Court denied his request for a temporary restraining order enjoining the December 1, 2008 tenure hearing, OSU employees, including the dean of his college and the university provost, deliberately delayed appellate review of his tenure petition until October 26, 2009.[3] He argues that, given the impossibility of obtaining a new right-to-sue letter covering this final decision before a January 2010 trial date, he was forced to dismiss his lawsuit

---

[3] Plaintiff, who dismissed his first lawsuit two weeks earlier, implies that Defendant had been waiting for this dismissal to issue its final decision. (Doc. 19 at 17.)

6

without prejudice and seek a new letter.[4]  Moreover, the delay "hogtied Seoane for 11 months" and prevented him from timely including claims in his second charge for retaliatory conduct which had occurred in November and December 2008.

In the first place, as Defendant points out, this court has held before that equitable tolling cannot apply where the statute of limitations had already expired before the events giving rise to tolling even occurred.  *See Gex v. Toys "R" Us, Inc.*, 2007 WL 2852351 at *3 (S.D. Ohio Oct. 2, 2007); *Fowlkes v. U.S. National Archive and Records Administration*, 2009 WL 1687940 at *4 (S.D. Ohio June 15, 2009).  *See also Wallace v. Wheeling-Pittsburgh Steel Corp.*, 2008 WL 4347358 at *3 (S. D. Ohio Sept. 19, 2008) ("there are no instances... where a statute of limitations that had already run had been tolled.").  Plaintiff dismissed his 2007 litigation on a date more than ninety days after receiving his 2007 right-to-sue letter.  The statute of limitations had, on that date, already elapsed.  No actions by Defendant after that time, inequitable or otherwise, could act retroactively to revive the expired claim.[5]

In the second place, Plaintiff's explanation of the strategic trilemma into

---

[4] Defendant correctly points out that, at the time when Plaintiff dismissed his original action, the Court had already postponed trial from January until April 2010.

[5] *Gex*, *supra*, had facts similar to those at bar.  This court found that a plaintiff who had voluntarily dismissed her case and then refiled one year later had failed to file the new lawsuit within ninety days of receipt of her right-to-sue letter.  Moreover, although the plaintiff argued that the defendant should be estopped from asserting the statute of limitations because it had agreed to the voluntary dismissal, "the 2004 Case was dismissed long after the ninety-day limitation had expired.  Since the ninety-day limitation had run, there was no statute of limitations to toll." *Id.* at *5.

which Defendant had forced him strains the application of equitable tolling. As this court recounted in *Gex*, supra:

> The limitations provided in a federal statute were tolled, for example, where the defendants' negotiations with the plaintiff, including making express statements tolling the statute, and plaintiff's reliance thereon, could reasonably have led the plaintiff to delay in the filing of charges with the EEOC. Also, the time limits may be tolled by "outside influences" such as insanity or minority. In another example, time limits were tolled when the defendant misled the plaintiff into believing that the plaintiff had more than three years in which to bring an action. Finally, the time limits have been tolled in situations where the plaintiff pursued an alternative judicial remedy in state court reasonably believing it to be available to her.

*Id.* at *3 (citations omitted). Plaintiff has presented cases, such as *Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007), and *Seay v. Tenn. Valley Auth.*, *supra*, where a court did not expressly review the *Bledsoe* factors quoted above before finding that circumstances warranted tolling. But these involve situations where an employer withheld or misrepresented information which delayed a plaintiff's ability to determine the nature of his claim, or that it existed at all. As *Bledsoe* itself indicates, equitable tolling is intended to be applied in situations where factors not under the plaintiff's control prevented him from knowing how to pursue his claim or that time to file it might be running out. Plaintiff here was not barred, in 2009, from requesting that the trial date again be postponed, or from moving for a stay of this action pending the outcome of his appeal, or from exercising some other procedural option. His decisions and those of his attorney, however, were not outside Plaintiff's control, and Defendant did not withhold any meaningful information which affected his ability to comprehend what was going on. Equitable

tolling is not a substitute for careful litigation strategy.

**2009 EEOC charge**. Any alleged conduct covered by the 2006 EEOC charge is dismissed as time-barred. The question remaining, therefore, is what conduct was covered by Plaintiff's 2009 charge. Plaintiff, in his memorandum contra, itemized his individual allegations of retaliation thus:

1. December 1, 2008 statements by Dr. Raj Balkrishnan to COP faculty.

2. December 1, 2008 decision by Dean Robert Brueggemeier to bar COP faculty from reviewing a letter by Seoane concerning retaliation.

3. Retaliatory selection of biased tenure reviewers, of which Seoane learnt on September 25, 2008.

4. November and December 2008 letters by three faculty.

5. Presentation of an incomplete accomplishments dossier to the voting faculty, about which Seoane complained in November 2008.

6. November and December 2008 refusal to delay the faculty vote on Seoane's tenure.

7. OSU Provost Joseph Alutto's April 8, 2009 recommendation that Seoane be denied tenure.

8. October 26, 2009 decision by faculty hearing committee to affirm Alutto's decision.

9. July 2008 decision by OSU to subject Seoane to discipline for having filed a complaint alleging retaliation against a colleague.

(Doc. 19 at 8-9.) Plaintiff asserts that these nine retaliation claims were set forth in his November 2, 2009 EEOC intake questionnaire.

The parties disagree as to whether Plaintiff's November 2, 2009 intake

9

questionnaire or February 4, 2010 charge of discrimination qualifies as his real 2009 charge. Nevertheless, 300 days before the earlier of these two was January 6, 2009. Nos. 1, 2, 3, 4, 5, 6, and 9 of the above predate this date, and therefore did not represent a timely basis for the 2009 EEOC charge. Plaintiff argues, as noted above, that equitable tolling should act to save his earlier claims, but the Court has already rejected this rationale. These allegations are therefore time-barred, leaving at issue only Nos. 7 and 8, the April 8, 2009 Alutto recommendation that tenure be denied, and the October 26, 2009 decision by the faculty hearing committee to affirm Alutto's decision.

Plaintiff's February 4, 2010 charge of discrimination consisted, in its entirety, of the following text:

> I was hired as an Assistant Professor August 19, 2002 at The Ohio State University.
>
> After filing charges with EEOC, on October 26, 2009 the University Faculty Hearing Committee dismissed my appeal, and affirmed the denial of my tenure.
>
> I believe I was retaliated against for participating in a protected activity in violation of Title VII of The Civil Rights Act of 1964, as amended.

(Doc. 8-1 at 3.) Defendant argues that this charge includes within its scope only No. 8, the denial of appeal of Alutto's decision, and omits No. 7, Alutto's decision itself. "[A] Title VII litigant's assertion of discriminatory conduct in Court is 'limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Jackson v. Ohio Bell Telephone Co.*, 555 F.Supp. 80, 83 (S. D. Ohio

10

1982), quoting *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980). While Plaintiff's intake questionnaire was considerably larger and contained a substantial body of allegations, Defendant argues, it cannot serve as a charge of discrimination in its own right because it was not verified. Plaintiff rebuts that the intake questionnaire qualifies as a charge of discrimination under the standard set in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), and that later verification related back to the original questionnaire.

The *Holowecki* Court, faced with an EEOC intake questionnaire accompanied by a signed affidavit describing allegations of discrimination and a request for it to act to stop further discrimination, determined that such a document qualified as a charge where it satisfied the EEOC's requirements for a charge and could be reasonably construed as a request for the agency to take remedial action.[6] *Id.* at 405-406. One of these requirements is that the "charge" be in writing, signed, and verified. 29 C.F.R. §1601.9. While Plaintiff did sign his intake questionnaire, it was not under oath or otherwise verified. (Doc. 2-3 at 3-7.) Defendant concedes that Plaintiff's later February 4, 2010 "Charge of Discrimination" was verified, but argues that a later sworn charge can only "relate back" to allegations which appear

---

[6] The intake questionnaire at issue here was accompanied by a cover letter from Plaintiff's counsel, referring to the questionnaire as "this charge" and requesting that the EEOC, rather than the Ohio Civil Rights Commission, investigate. (Doc. 2-3 at 1.)

11

in both the charge and the intake questionnaire.[7]  Here, it posits, Plaintiff only referred in his charge to the August 26, 2009 denial of appeal, not the April 8, 2009 Alutto recommendation (or, for that matter, any other matter alleged in the intake questionnaire).

There is support for the proposition that, where a claimant has subsequently filed a verified charge of limited scope, it will not relate back to a more general intake questionnaire.  *See, e.g., Edelman v. Lynchburg College*, 300 F.3d 400, 405 (4th Cir. 2002).  Certainly, in general, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge.  *See* 42 U.S.C. §2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).  Nevertheless, courts may consider claims that are reasonably related to, or grow out of, the factual allegations in the EEOC charge.  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006).  "As a result, 'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."  *Younis*, 610 F.3d at 362, quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

Plaintiff's contention that an EEOC investigator reading "[a]fter filing

---

[7] "A charge may be amended to cure technical defects or omissions, including failure to verify the charge[.]  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."  29 C.F.R. §1601.12(5)(b).  *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010).

charges with EEOC on October 26, 2009 the University Faculty Hearing Committee dismissed my appeal, and affirmed the denial of my tenure" would conclude that Seoane must have also meant to relate back to his entire corpus of other allegations is somewhat exaggerated. Nevertheless, the original April 8, 2009 Alutto recommendation that tenure be denied is reasonably related to the later denial of appeal of that decision. The Court is not precluded from considering it. Retaliation Charges Nos. 7 and 8 are therefore both timely and within the scope of Plaintiff's EEOC charge.

**Pleading deficiencies**. Defendant argues with respect to No. 8 that denial of Plaintiff's appeal of his denial of tenure is, as a matter of law, not an adverse employment action giving rise to a *prima facie* claim of retaliation under Title VII. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008), citing *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). It cites *Delaware State College v. Ricks*, 449 U.S. 250 (1980) for the proposition that only the initial denial of tenure could have been actionable, not an unfavorable outcome of a later grievance process. Plaintiff rejoins that, under *Reid v. Univ. of Michigan*, 612 F.Supp. 320 (W.D. Mich. 1985), a review of tenure decision which was sufficiently *de novo* could itself be an actionable final decision. The parties disagree as to what extent the review of Plaintiff's tenure appeal under OSU rules should be considered a *de novo* "do-over". Analysis of OSU's tenure appeal rules is a matter outside the scope of the pleadings in this action, and the Court declines at this time to treat Defendant's motion as one for summary judgment under Fed. R. Civ. P. 56.

Whether or not the denial of Plaintiff's appeal qualified as an adverse employment action is a question therefore not presently at issue.

However, Defendant also argues that, whether or not it was an adverse employment action for the university faculty hearing committee to affirm the denial of Plaintiff's tenure, his complaint in this action makes no reference to the university faculty hearing committee or its October 26, 2009 decision and does not therefore state a claim concerning it.  Plaintiff rebuts that his complaint contains such allegation by virtue of the fact that Exhibit 3 to the complaint (his intake questionnaire) made reference to it, and because ¶¶62-63 refers generally to Plaintiff having exhausted his administrative remedies.

Defendant's argument is well taken; it is correct that the complaint in this case does not refer to the sole remaining alleged retaliatory deed at issue, or the persons who allegedly committed it.  This would be grounds for dismissing it under Fed. R. Civ. P. 12(b)(6).  However, Plaintiff requests "leave to amend his Complaint to more specifically articulate Retaliation Charges 1-9".  Such leave should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Plaintiff will be permitted to amend his complaint to explicitly plead that the April 8, 2009 Alutto recommendation, and the October 26, 2009 appellate decision, were retaliatory actions.

Conclusion.  For the reasons set forth above, Defendant's motion to dismiss (Doc. 8) is **GRANTED IN PART**.  It is hereby **ORDERED** that:

• Count 1 and Count 3 of Plaintiff's complaint are **DISMISSED**.

• Plaintiff is **GRANTED** leave to amend his Complaint to explicitly set forth a cause of action based upon the April 8, 2009 recommendation of Dr. Alutto and the October 26, 2009 actions of the University Faculty Hearing Committee. He shall do so on or before **Friday, February 11, 2011**. The Court finds that these are the sole matters within the scope of Plaintiff's EEOC Charge of Discrimination, and that Plaintiff's claims are otherwise **DISMISSED**.

s/Mark R. Abel
United States Magistrate Judge
